**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **BRIAN MAHONEY, et al.,** | * | |
| **Plaintiffs,** | * | |
| **v.** | * | |
| | * | **CIVIL NO. JKB-22-0127** |
| **iPROCESS ONLINE, INC, et al.,** | * | |
| **Defendants.** | * | |

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

## MEMORANDUM

Pending before the Court is Plaintiffs' Motion for Default Judgment. (ECF No. 18.) Plaintiffs brought six claims against Defendants: a claim under the Employment Retirement Income Security Act ("ERISA") against iProcess Online, Inc. ("iProcess") and Michelle Leach-Bard (Chief Operating Officer, iProcess) (Count I); a conversion claim against iProcess and Leach-Bard (Count II); a breach of contract claim against iProcess (Count III); a fraud claim against iProcess (Count IV); and a negligent misrepresentation claim against iProcess (Count V). (Compl. ¶¶ 19–51, ECF No. 1.) For the reasons set forth below, Plaintiffs' Motion will be granted in part and denied in part and Plaintiffs will be directed to provide an accounting of their damages and briefing on any additional relief they are seeking.

### I.   Facts

Plaintiffs Brian Mahoney, Meghan DeMeio, and Christina Reed were all employed by iProcess. (Compl. ¶ 5–7.) They allege that iProcess and Leach-Bard failed to transfer earned wages and agreed-upon employer matching contributions into Plaintiffs' 401(k) accounts. (*Id.* ¶ 16.)

Plaintiffs allege that iProcess maintains retirement accounts pursuant to 26 U.S.C. § 401(k) (hereinafter, "401(k)") for its employees and that employees were to have one percent of their earned wages deposited into their 401(k) accounts. (*Id.* ¶ 10.) In addition, iProcess was to deposit an employer match of one percent into those accounts. (*Id.* ¶ 11.) Plaintiffs allege that, between September 2014 and October 2021, iProcess deducted one percent of Plaintiffs' earned salaries from each paycheck, and that Plaintiffs' paychecks and earning statements indicated that those funds were transferred to 401(k) accounts. (*Id.* ¶¶ 12, 14.) However, Plaintiffs aver that iProcess did not deposit any earned funds or employer matching funds into their 401(k) accounts. (*Id.* at ¶ 12, 13.) Plaintiffs' efforts to discuss the issue with Leach-Bard were unsuccessful. (*Id.* ¶ 15–18.) Plaintiffs allege violations of ERISA and violations of state law, including conversion, breach of contract, fraud, and negligent misrepresentation. (*Id.* ¶¶ 19–51.)

Defendants were served (ECF Nos. 11, 12) but to date have not entered an appearance or otherwise responded to this action. Accordingly, Plaintiffs filed a Motion for Clerk's Entry of Default (ECF No. 17), which was granted (ECF No. 19). Plaintiffs also filed the instant Motion for Default Judgment. (ECF No. 18.)

## II.    *Standard*

After entry of default under Rule 55(a), a party may move for default judgment. Fed. R. Civ. P. 55(b)(2). Entry of default against a defendant does not alone entitle a plaintiff to judgment as of right:

> "The defendant, by [its] default, admits the plaintiff's well-pleaded allegations of fact . . . [but] is not held . . . to admit conclusions of law. In short, . . . a default is not treated as an absolute confession by the defendant of [its] liability and of the plaintiff's right to recover." The court must . . . determine whether the [conceded facts] support the relief sought in [the] action.

2

*Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001) (quoting *Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)). "In the Fourth Circuit, district courts analyzing default judgments have applied the standards articulated by the United States Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), to determine whether allegations within the complaint are 'well-pleaded.'" *Vasquez-Padilla v. Medco Properties, LLC*, Civ. No. PX 16-3740, 2017 WL 4747063, at *2 (D. Md. Oct. 20, 2017) (collecting cases). "Where a complaint offers only 'labels and conclusions' or 'naked assertion[s] devoid of further factual enhancement,' the allegations therein are not well-pleaded and, consistent with the Court's discretion to grant default judgment, relief should be denied." *Id.*

### III.    *Analysis*

For the reasons set forth below, the Court will deny Plaintiffs' Motion for Default Judgment with respect to the ERISA and conversion claims against iProcess and Leach-Bard, but will grant the Motion with respect to Plaintiffs' breach of contract, fraud, and negligent misrepresentation claims against iProcess. The Court will also direct Plaintiffs to conduct an accounting of their compensatory damages and to provide briefing on the total amount of damages they are seeking.

#### A.  *ERISA Claim (Count I)*

The Court will deny Plaintiffs' Motion for Default Judgment with respect to their ERISA claim. As an initial matter, it is not clear under which provisions of ERISA Plaintiffs are attempting to bring their claims. Plaintiffs label Count I of their Complaint "ERISA" and broadly state that "iProcess violated ERISA by deducting monies from Plaintiffs' earned wages and failing to transfer those monies into each Plaintiff['s] 401(k) account" and that "Leach is or was a fiduciary of iProcess's 401(k) plan and pursuant to ERISA, and she violated her fiduciary duty to

Plaintiffs by knowingly allowing or facilitating iProcess to deduct monies from Plaintiffs' earned wages and fail to transfer those monies into Plaintiffs' 401(k) accounts, pursuant to ERISA, Leach-Bard "is or was a fiduciary of iProcess's 401(k) plan" and "she violated her fiduciary duty to Plaintiffs by knowingly allowing or facilitating iProcess to deduct monies from Plaintiffs' earned wages and fail to transfer those monies into Plaintiffs' 401(k) accounts." (Compl. ¶¶ 21, 22.) Plaintiffs explain that this Court has jurisdiction pursuant to 29 U.S.C. § 1132(a)(1)(B). (Compl. ¶ 2.) That provision provides that a civil action may be brought by a participant or beneficiary "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B).

However, 29 U.S.C. § 1132(a)(1)(B) is not the correct provision to bring a fiduciary duty claim. Rather, breach of fiduciary duty claims are brought pursuant to 29 U.S.C. § 1132(a)(3) (to which Plaintiffs do not cite), which authorizes a participant, beneficiary or fiduciary to bring an action for individual equitable relief for breach of fiduciary obligations. *Griggs v. E.I. DuPont de Nemours & Co.*, 237 F.3d 371, 384 (4th Cir. 2001) ("By this provision, Congress provided individual beneficiaries with an avenue to seek equitable relief for a breach of fiduciary duty under ERISA."). Plaintiffs fail to adequately allege a claim under either of these provisions.

To the extent Plaintiffs sought to bring a claim for benefits under 29 U.S.C. § 1132(a)(1)(B), they have not adequately alleged such a claim. "[W]here the resolution of a plaintiff's claim rests upon an interpretation and application of an ERISA-regulated plan rather than upon an interpretation and application of ERISA, the plaintiff's claim is actually a claim for benefits." *Pearson v. Abbott Lab'ys Annuity Ret. Plan*, Civ. No. 406-03330-RBH, 2007 WL 2688616, at *4 (D.S.C. Sept. 10, 2007) (citing *Smith v. Sydnor*, 184 F.3d 356, 362 (4th Cir. 1999)).

4

Here, Plaintiffs indicate that "[p]ursuant to the terms and conditions of each Plaintiffs' employment at iProcess (including The E401K Plan from Fidelity iProcess Online, Inc. 401K and offer of employment letters) and iProcess's employment handbook, iProcess promised and agreed to pay into each Plaintiff's 401(k) account an employer match of 1% of each Plaintiff's gross yearly salary." (Compl. ¶ 11.) Further, the one plan-related document—which appears to be the "The E401K Plan from Fidelity iProcess Online, Inc. 401K" document Plaintiffs reference in their Complaint—does not speak to the one-percent deduction or employer match. (*See* ECF No. 18 at 12–22.) Plaintiffs therefore appear to be bringing a claim relating to withheld compensation pursuant to employment documents, not pursuant to an ERISA plan. *See Hewett v. Tri-State Radiology, P.C.*, Civ. No. WMN-09-2017, 2009 WL 3048675, at *3 (D. Md. Sept. 17, 2009) (finding that plaintiffs did not state a claim under ERISA where the plaintiff "challeng[ed] the withholding of compensation allegedly due under the employment agreements in order to fund a benefit plan" because the plaintiff was not seeking "to recover benefits due to him *under the terms of his plan*, to enforce his rights *under the terms of the plan*, or to clarify his rights to future benefits *under the terms of the plan*" (quoting 29 U.S.C. § 1132).); *Goldstein v. Media Mgmt., Inc.*, Civ. No. 4:12-1021-JAR, 2012 WL 4793741, at *3 (E.D. Mo. Oct. 9, 2012) (finding that a claim did not arise under ERISA where a plaintiff alleged that defendants "took payments that were supposed to be directed to his retirement plan and used them for their own benefit" because "[p]laintiff alleges that [d]efendants failed to deposit any funds in a retirement account . . . not that he was denied benefits pursuant to an ERISA-governed plan"). Therefore, Plaintiffs have not sufficiently alleged a violation of 29 U.S.C. § 1132(a)(1)(B).

To the extent Plaintiffs sought to bring a breach of fiduciary duty claim under 29 U.S.C. § 1132(a)(3), such a claim requires that a plaintiff show "1) that a defendant was a fiduciary of the

ERISA plan, 2) that a defendant breached its fiduciary responsibilities under the plan, and 3) that

the participant is in need of injunctive or other appropriate equitable relief to remedy the violation

or enforce the plan." *Adams v. Brink's Co.*, 261 Fed. Appx. 583, 590 (4th Cir. 2008). "[T]he

threshold question is whether . . . the defendant was a 'fiduciary.'" *Moon v. BWX Techs., Inc.*, 577

F. App'x 224, 229 (4th Cir. 2014). "ERISA contemplates two general types of fiduciaries[,]"

named fiduciaries and functional fiduciaries also referred to as *de facto* fiduciaries. *Dawson-

Murdock v. Nat'l Counseling Grp., Inc.*, 931 F.3d 269, 275 (4th Cir. 2019). Specifically, with

regard to functional fiduciaries:

> a person is a fiduciary with respect to a plan to the extent (i) he exercises any
> discretionary authority or discretionary control respecting management of such
> plan or exercises any authority or control respecting management or disposition of
> its assets, (ii) he renders investment advice for a fee or other compensation, direct
> or indirect, with respect to any moneys or other property of such plan, or has any
> authority or responsibility to do so, or (iii) he has any discretionary authority or
> discretionary responsibility in the administration of such plan.

*Id.* (citing 29 U.S.C. § 1002(21)(A)).

Plaintiffs do not allege that either Defendant is a named fiduciary, nor do they allege

sufficient facts to allow the Court to conclude that Defendants are functional fiduciaries. Rather,

Plaintiffs only allege that "[u]pon information and belief, Leach[-Bard] is or was a fiduciary of

iProcess's 401(k) plan" (Compl. ¶ 22), and the one plan document Plaintiffs have provided (ECF

No. 18 at 12–22) likewise does not indicate that iProcess or Leach-Bard are fiduciaries. Thus,

Plaintiffs do not sufficiently allege that Defendants are fiduciaries. *See In re Mut. Fund Inv. Litig.*,

403 F. Supp. 2d 434, 446 (D. Md. 2005) ("[P]laintiffs must do more than quote the statutory

language regarding 'discretionary control' to plead adequately that a given defendant is a de facto

ERISA fiduciary"); *Int'l Painters & Allied Trades Indus. Pension Fund v. Clayton B.

Obersheimer, Inc.*, Civ. No. ELH-12-1000, 2013 WL 594691, at *7 (D. Md. Feb. 13, 2013)

("[B]ald allegations that an officer had discretionary authority or control over the plan assets are insufficient").  Plaintiffs' potential 29 U.S.C. § 1132(a)(3) claim for breach of fiduciary duty therefore also fails.[1]

Accordingly, the Court will deny Plaintiffs' Motion for Default Judgment with respect to Plaintiffs' ERISA claim against iProcess and Leach-Bard.

### B.  State Law Claims (Counts II–V)

Plaintiffs also bring several state law claims: a conversion claim against Leach-Bard and iProcess, and breach of contract, fraud, and negligent misrepresentation claims against iProcess. (Compl. ¶¶ 24–51.)  The Court will exercise supplemental jurisdiction over these claims and will grant Plaintiffs' Motion for Default Judgment as to the breach of contract, fraud, and negligent misrepresentation claims against iProcess.  The Court will deny Plaintiffs' Motion for Default Judgment as to the conversion claim against Leach-Bard and iProcess.

#### 1.  Supplemental Jurisdiction

Despite dismissing the ERISA claim, the Court may exercise jurisdiction over the remaining state law claims.  *See* 28 U.S.C. § 1367(c)(3) ("The district courts *may* decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction" (emphasis added)); *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006) ("[W]hen a court grants a motion to dismiss for failure to state a federal claim, the court generally retains discretion to exercise supplemental jurisdiction, pursuant to 28 U.S.C. § 1367, over pendent state-law claims."); *Trustees of Nat. Asbestos Workers Med. Fund v. Wilson*,

---

[1]     Further, 29 U.S.C. § 1132(h) provides that "[a] copy of the complaint in any action under this subchapter by a participant, beneficiary, or fiduciary (other than an action brought by one or more participants or beneficiaries under subsection (a)(1)(B) which is solely for the purpose of recovering benefits due such participants under the terms of the plan) shall be served upon the Secretary and the Secretary of the Treasury by certified mail."  It does not appear from the docket that Plaintiffs have appropriately served copies of the Complaint to anyone other than the Defendants.

Civ. No. 12-06449, 2014 WL 1329935, at *2 (S.D. W. Va. Mar. 28, 2014) ("Although I find that the plaintiff cannot state a claim under ERISA, I retain discretion to exercise jurisdiction over the remaining state law claims.").

The Fourth Circuit has explained that "trial courts enjoy wide latitude in determining whether or not to retain jurisdiction over state claims when all federal claims have been extinguished." *Shanaghan v. Cahill*, 58 F.3d 106, 110 (4th Cir. 1995). In deciding whether to exercise supplemental jurisdiction, courts consider "convenience and fairness to the parties, the existence of any underlying issues of federal policy, comity, and considerations of judicial economy." *Id.*

The Court concludes that such values weigh in favor of retaining jurisdiction over state law claims, where Plaintiffs have already served Defendants and where Defendants have defaulted. Requiring Plaintiffs to begin this process anew in state court would not serve the values of convenience, fairness, or judicial economy. Further, the remaining state law claims do not implicate novel or complicated state laws such that they would be more appropriately resolved in that forum. Therefore, the Court will exercise supplemental jurisdiction over the state law claims.

### 2. Conversion (Count II)

The Court will deny Plaintiffs' Motion for Default Judgment as to the conversion claim against iProcess and Leach-Bard. Under Maryland law, "[t]he general rule is that monies are intangible and, therefore, not subject to a claim for conversion." *Allied Inv. Corp. v. Jasen*, 731 A.2d 957, 966 (Md. 1999). "[O]ne element of conversion of a plaintiff's intangible property is conversion of a document that embodies the plaintiff's right to the plaintiff's intangible property." *Thompson v. UBS Fin. Servs., Inc.*, 115 A.3d 125, 128 (Md. 2015). Further, a conversion claim will not lie where a plaintiff does not "allege[] [that the] monies were maintained in a separate,

8

segregated account by respondent." *Allied Inv. Corp.*, 731 A.2d at 967. As this Court has explained, "[e]ssentially, courts applying Maryland law have distinguished between claims seeking return of the actual, identical money, and those seeking a specific amount of money." *Nash v. Montgomery Cnty., Md.*, Civ. No. GJH-20-1138, 2021 WL 1222874, at *8 (D. Md. Mar. 31, 2021).

Although Plaintiffs have alleged that Defendants wrongfully deducted money from their paychecks, Plaintiffs have not alleged that Defendants converted any document embodying their rights to the funds, nor have they alleged that Defendants maintained the funds in a separate, segregated account. Accordingly, Plaintiffs have failed to state a claim for conversion and the Court will deny the Motion for Default Judgment with respect to the conversion claim.

### 3. Breach of Contract (Count III)

The Court will grant Plaintiffs' Motion for Default Judgment with respect to their breach of contract claim against iProcess. Under Maryland law, "a complaint alleging a breach of contract 'must of necessity allege with certainty and definiteness facts showing a contractual obligation owed by the defendant to the plaintiff and a breach of that obligation by defendant.'" *RRC Ne., LLC v. BAA Maryland*, Inc., 994 A.2d 430, 440 (Md. 2010) (quoting *Continental Masonry Co., Inc. v. Verdel Constr. Co., Inc.*, 369 A.2d 566, 569 (Md. 1977) (emphasis omitted)).

Plaintiffs have sufficiently alleged a breach of contract here by alleging that the terms and conditions of Plaintiffs' employment included an agreement to pay earned wages and matching funds into Plaintiffs' retirement accounts and by alleging that iProcess did not do so. (Compl. ¶¶ 10–11.) Accordingly, the Court will grant Plaintiffs' Motion for Default Judgment with respect to Plaintiffs' breach of contract claim against iProcess.

### 4.   Fraud (Count IV)

Next, the Court will grant Plaintiffs' Motion for Default Judgment with respect to their

fraud claim against iProcess. Under Maryland law, the elements of a fraud claim are:

> (1) the defendant made a false representation to the plaintiff, (2) the falsity of the
> representation was either known to the defendant or the representation was made
> with reckless indifference to its truth, (3) the misrepresentation was made for the
> purpose of defrauding the plaintiff, (4) the plaintiff relied on the misrepresentation
> and had the right to rely on it, and (5) the plaintiff suffered compensable injury as
> a result of the misrepresentation.

*Hoffman v. Stamper*, 867 A.2d 276, 292 (Md. 2005). "[R]ecovery in a tort action for fraud or

deceit in Maryland is based upon a defendant's deliberate intent to deceive." *Ellerin v. Fairfax

Sav., F.S.B.*, 652 A.2d 1117, 1123 (Md. 1995).

Plaintiffs have sufficiently alleged fraud here, where they allege that iProcess promised to

place Plaintiffs' earned wages and additional monies into retirement accounts and failed to do so

for a period of over seven years but continued to indicate on Plaintiffs' paychecks that monies

were transferred from Plaintiffs' earned wages into 401(k) accounts. Plaintiffs have also

sufficiently alleged that iProcess either knowingly or with reckless indifference made false

statements to Plaintiffs for the purpose of defrauding them. *See* Fed. R. Civ. P. 9(b) (allowing

"conditions of a person's state of mind," such as intent and knowledge, to be alleged generally).

Plaintiffs have also sufficiently alleged that they relied on such misrepresentations and had the

right to rely on them, given that iProcess allegedly defrauded Plaintiffs with respect to funds that

Plaintiffs had earned pursuant to their employment agreements. Further, Plaintiffs suffered

compensable injury—lost wages and employer contributions—as a result. Therefore, Plaintiffs

have sufficiently alleged fraud against iProcess.

### 5.   Negligent Misrepresentation (Count V)

Finally, the Court will grant Plaintiffs' Motion for Default Judgment with respect to their negligent misrepresentation claim against iProcess. Under Maryland law, negligent misrepresentation includes the following elements:

> (1) The defendant, owing a duty of care to the plaintiff, negligently asserts a false statement; (2) The defendant intends that his statement will be acted upon by the plaintiff; (3) The defendant has knowledge that the plaintiff will probably rely on the statement, which, if erroneous, will cause loss or injury; (4) The plaintiff, justifiably, takes action in reliance on the statement; and (5) The plaintiff suffers damage proximately caused by the defendant's negligence.

*Flaherty v. Weinberg*, 492 A.2d 618, 627–28 (Md. 1985).

"For claims of economic loss due to negligent misrepresentation, the injured party must prove that the defendant owed him or her a duty of care by demonstrating an intimate nexus between them." *Griesi v. Atl. Gen. Hosp. Corp.*, 756 A.2d 548, 554 (Md. 2000). Maryland courts "consider the closeness of the relationship between the parties—especially one party's reliance on the other party's exercise of due care—when determining whether there is an intimate nexus that would support finding a duty of care." *Balfour Beatty Infrastructure, Inc. v. Rummel Klepper & Kahl, LLP*, 155 A.3d 445, 456 (Md. 2017). Employee-employer relationships give rise to this nexus. *See Abercrombie v. Nationwide Mut. Ins. Co.*, 999 F. Supp. 660, 663 (D. Md. 1998), *aff'd*, 168 F.3d 481 (4th Cir. 1999) ("Maryland clearly holds that contractual privity, such as that created by a contract of employment, creates a sufficiently 'intimate nexus' to sustain the tort of negligent misrepresentation."); *Amenyah v. Randolph Hills Nursing Care, Inc.*, Civ. No. TDC-15-3062, 2016 WL 3546219, at *5 (D. Md. June 23, 2016) (finding that plaintiffs sufficiently alleged a nexus where "[t]he alleged statements related to Plaintiffs' future employment and benefits, which any employer would understand to be a serious matter for employees" and where defendants "knew that [p]laintiffs would rely on their representations").

11

Here, Plaintiffs have sufficiently alleged such "intimate nexus," given the employer-employee relationship between Plaintiffs and iProcess. Further, as Maryland courts have recognized, "[f]raud and negligent misrepresentation share common elements." *Gross v. Sussex Inc.*, 630 A.2d 1156, 1162 (Md. 1993). The key difference between the two is that, while fraud requires a knowing falsity, negligent misrepresentation "only requires conduct which falls below the standard of care the maker of the statement owes to the person to whom it is made." *Id.* Accordingly, "unless the maker of the false statement owes a duty of care to the party who relies on it, there can be no recovery for negligent misrepresentation." *Id.* Having found such duty of care and having found that Plaintiffs sufficiently alleged fraud, the Court concludes that Plaintiffs have sufficiently alleged negligent misrepresentation.

Accordingly, the Court will deny Plaintiffs' Motion for Default Judgment with respect to the ERISA and conversion claims against iProcess and Leach-Bard, but will grant the Motion with respect to Plaintiffs' breach of contract, fraud, and negligent misrepresentation claims against iProcess.

## IV.    *Damages*

Because the Court will grant Plaintiffs' Motion for Default Judgment with respect to their breach of contract claim, fraud claim, and negligent misrepresentation claim against iProcess, the Court must make a determination of damages. *See Agora Fin., LLC v. Samler*, 725 F. Supp. 2d 491, 494 (D. Md. 2010) ("If the court determines that liability is established, the court must then determine the appropriate amount of damages . . . . The court does not accept factual allegations regarding damages as true, but rather must make an independent determination regarding such allegations.").

12

The court may award damages without a hearing if "the record supports the damages requested," such as through comprehensive, detailed, and uncontroverted exhibit and affidavit evidence establishing the amount of damages. *Balt. Line Handling Co. v. Brophy,* 771 F. Supp. 2d 531, 541 (D. Md. 2011). Therefore, the Court will direct Plaintiffs to provide an accounting of any compensatory damages they seek. Such accounting must be accompanied by sufficient evidence to allow the Court to determine the appropriate damages (including sworn affidavits, where appropriate). To the extent Plaintiffs seek relief beyond compensatory damages, they will also be directed to provide briefing regarding such relief.

## V.    *Conclusion*

For the foregoing reasons, the Court will grant in part and deny in part Plaintiffs' Motion for Default Judgment. The Motion will be granted with respect to the breach of contract claim (Count III), the fraud claim (Count IV), and the negligent misrepresentation claim (Count V) against iProcess. The Motion will be denied with respect to the ERISA claim (Count I) and the conversion claim (Count II) against Leach-Bard and iProcess. Further, the Court will direct Plaintiffs to provide an accounting of their compensatory damages and to provide briefing on additional relief, if any, that they seek.

DATED this 12 day of December, 2022.

BY THE COURT:

James K. Bredar
Chief Judge