# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **BRIAN MAHONEY, et al.,** | * | |
| **Plaintiffs,** | * | |
| v. | * | |
| | | CIVIL NO. JKB-22-0127 |
| **iPROCESS ONLINE, INC, et al.,** | * | |
| **Defendants.** | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM

The Court previously granted in part Plaintiffs' Motion for Default Judgment and directed Plaintiffs to provide an accounting of their damages and additional relief. (*See* ECF Nos. 23, 24.) Pending before the Court is Plaintiffs' Accounting of Damages and related supplement. (ECF Nos. 27, 29.) The Court will award Plaintiffs a total of $559,304.50, which represents $279,652.25 in compensatory damages and $279,652.25 in punitive damages.

## I. *Factual and Procedural Background*

As described in more detail in the Court's Memorandum and Order granting in part and denying in part Plaintiffs' Motion for Default Judgment, Plaintiffs Brian Mahoney, Meghan DeMeio, and Christina Reed were employed by iProcess Online, Inc. ("iProcess"). (ECF No. 23 at 1.) Between September 2014 and October 2021, iProcess and Michelle Leach-Bard (Chief Operating Officer, iProcess) deducted one percent of Plaintiffs' earned wages from their paychecks but failed to transfer those funds and agreed-upon employer matching contributions into Plaintiffs' 401(k) accounts. (*Id.* at 1–2.) Plaintiffs filed a Complaint based on these allegations. (ECF No. 1.) Defendants were served but did not respond to the action and, accordingly, Plaintiffs filed a Motion for Clerk's Entry of Default, which was granted (ECF No. 19), and a Motion for Default

1

Judgment, which was granted in part. (*See* ECF No. 24.) In particular, the Court granted the Motion for Default Judgment as to the breach of contract, fraud, and negligent misrepresentation claims against iProcess. (*Id.*)

The Court directed Plaintiffs to provide an accounting of their damages. (*Id.*) Plaintiffs filed such accounting, (ECF No. 27), and the Court directed Plaintiffs to file a supplement, as Plaintiffs appeared to undercalculate certain losses. (ECF No. 28.) Plaintiffs have filed a supplement. (ECF No. 29.) Each Plaintiff seeks damages comprised of compensatory damages for the breach of contract and negligent misrepresentation claims and punitive damages for the fraud claims. In support, Plaintiffs provide iProcess employee records, which reflect the amount of money that iProcess represented was being transferred to Plaintiffs' 401(k) accounts, and Fidelity records, which reflect the actual amount that was being transferred into Plaintiffs' 401(k) accounts. (*See* ECF No. 27 at 84–183.) Plaintiffs also provide a report prepared by an economist retained to compute Plaintiffs' losses. (*See* ECF No. 29 at 5–11.)

The table below provides the total damages each Plaintiff seeks. Each Plaintiff seeks compensatory damages comprised of (1) earned wages and employer contributions that iProcess wrongly failed to deposit and (2) the "loss in accumulated investment returns," calculated using the annual rates of return on each Plaintiff's Fidelity account. (ECF No. 29 at 5–11.) Each Plaintiff seeks punitive damages equal to five times their compensatory damages. (ECF No. 29 at 1–3.)

|  | **Compensatory Damages** | | **Punitive Damages** | **Total Damages** |
|---|---|---|---|---|
|  | **Earned Wages and Employer Contributions** | **Investment Returns** | | |
| **Mahoney** | $88,738.85 | $43,465 | $661,020 | $793,224 |
| **DeMeio** | $61,586.79 | $26,501 | $440,440 | $528,528 |
| **Reed** | $40,771.61 | $18,589 | $296,800 | $356,160 |

2

## *II. Standard*

After entry of default under Rule 55(a), a party may move for default judgment. Fed. R. Civ. P. 55(b)(2). However, entry of default against a defendant does not entitle a plaintiff to judgment in its favor as of right and "[a]n allegation 'relating to the amount of damages' is not deemed admitted based on a defendant's failure to deny in a required responsive pleading." *Monge v. Portofino Ristorante*, 751 F. Supp. 2d 789, 794 (D. Md. 2010) (quoting Fed. R. Civ. P. 8(b)(6)). Although the Court may hold a hearing to ascertain the amount of damages, it is not required to do so if the record establishes the validity of the amount of damages requested. *See* Fed. R. Civ. P. 55(b)(2) (explaining that a court "may conduct hearings . . . when, to enter or effectuate judgment, it needs to" "conduct an accounting" or "determine the amount of damages").

## *III. Analysis*

As described in more detail below, the Court finds that Plaintiffs are entitled to a combined total of $279,652.25 in compensatory damages. The Court also finds that Plaintiffs are entitled to punitive damages, also in the amount of $279,652.25. Accordingly, Plaintiffs total damages will be $559,304.50. Further, the Court will deny without prejudice Plaintiffs' request for costs, as Plaintiffs did not follow the procedure set forth in this Court's Local Rules. Finally, post-judgment interest is mandatory, therefore Plaintiffs' request for post-judgment interest will be granted.

### *A. Compensatory Damages*

Plaintiffs each seek compensatory damages for breach of contract and negligent misrepresentation comprised of: (1) the earned wages and employer contributions that were never

3

deposited into their 401(k) accounts and (2) and the anticipated return on those contributions, had the contributions been transferred to their 401(k)s and been invested.[1]

Plaintiffs are entitled to such compensatory damages for their breach of contract and misrepresentation claims. In particular, they are entitled to those damages that would place them in the financial position they would have been had iProcess not misappropriated Plaintiffs' wages and employer matching contributions. *See Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 506 (4th Cir. 1986) ("In Maryland, a party suffering a breach of contract is entitled to recover as damages the amount that would place him in the position he would have been in had the contract not been broken."); *Hall v. Lovell Regency Homes Ltd. P'ship*, 708 A.2d 344, 349 (Md. Ct. Spec. App. 1998) (explaining that the goal of compensatory damages "[i]n tort actions founded on misrepresentation" is to put the plaintiff in "as nearly as practicable, in the position he would have been had he not been defrauded" (citation omitted)).

Further, "[u]nder Maryland law, compensatory damages 'must be proved with reasonable certainty, and may not be based on speculation or conjecture.'" *Majestic Distilling Co. v. Stanley Stawski Distrib. Co.*, 205 F.3d 1333 (Table) (4th Cir. 2000) (quoting *Asibem Assocs., Ltd. v. Rill*, 286 A.2d 160, 162 (Md. 1972)). The Court finds that Plaintiffs have proven their compensatory damages with the requisite certainty, as Plaintiffs provided iProcess employee statements and Fidelity account statements, which reflect the amount of earned wages and employer contributions that were never deposited into Plaintiffs' accounts. Moreover, Plaintiffs also provided the annual rates of return for each Plaintiff's Fidelity account from which Plaintiffs have extrapolated the

---

[1] The Court will award damages for the full timeframe requested by Plaintiffs. "[T]he statute of limitations is an affirmative defense, meaning that the defendant generally bears the burden of affirmatively pleading its existence ... Where a defendant has failed to raise a statute of limitations defense by way of its answer, the defense is usually waived." *Eriline Co. S.A. v. Johnson*, 440 F.3d 648, 653–54 (4th Cir. 2006). By failing to appear in this case, Defendants have waived the defense, and it would be improper for the Court to raise it *sua sponte*. *See id.* at 654–57.

4

anticipated return that they would have received had the funds been deposited into their Fidelity accounts as well as an economist's report relating to those anticipated returns.

Accordingly, default judgment will be entered against iProcess in favor of Plaintiffs in the amount of $279,652.25 with respect to compensatory damages, which represents $132,203.85 to Mahoney, $88,087.79 to DeMeio, and $59,360.61 to Reed.

### *B. Punitive Damages*

Plaintiffs seek punitive damages in the amount of five times their compensatory damages. Although the Court finds that punitive damages are warranted in this case, Plaintiffs are not entitled to the quintuple damages they seek. Rather, the Court will award a total of $279,652.25 in punitive damages, which is equal to the compensatory damages.

Plaintiffs argue that they are entitled to punitive damages equal to five times their compensatory damages because iProcess' conduct is egregious. (ECF No. 27 at 9, 13, 17.) In support, Plaintiffs highlight the length of time that the fraud was ongoing and the fact that it occurred in connection with hundreds of paychecks. (*Id.*) Plaintiffs also point to evidence that Leach-Bard was confronted about the missing funds and said she would investigate, but did not do so. (*Id.*) Finally, Plaintiffs point to evidence that iProcess is being investigated by the United States Department of Labor in connection with iProcess' handling of its 401(k) plan and that iProcess has apparently failed to respond to a subpoena for documents from the government in connection with that matter. (*Id.*)

"Maryland law has limited the availability of punitive damages to situations in which the defendant's conduct is characterized by knowing and deliberate wrongdoing." *Ellerin v. Fairfax Sav., F.S.B.*, 652 A.2d 1117, 1123 (Md. 1995). Such damages "may only be awarded in such cases when the plaintiff has established that the defendant's conduct was characterized by evil motive,

intent to injure, ill will, or fraud, i.e., 'actual malice.'" *Id.* (internal quotations and citation omitted). As relevant here, "the elements of the tort of fraud or deceit in Maryland, where the tort is committed by a defendant who knows that his representation is false, include the type of deliberate wrongdoing and evil motive that has traditionally justified the award of punitive damages." *Id.* at 1126. The Court finds that Plaintiffs are entitled to an award of punitive damages, given the deliberate misappropriation of funds to which they were entitled. As the Court previously concluded, iProcess knowingly defrauded Plaintiffs by failing to deposit Plaintiffs' earned wages and employer contributions into their 401(k) accounts for a period of several years. (ECF No. 23 at 10.)

A "purpose of punitive damages is to punish the defendant for egregiously bad conduct toward the plaintiff, and also to deter the defendant and others contemplating similar behavior." *Bowden v. Caldor, Inc.*, 710 A.2d 267, 272 (Md. 1998) (internal quotation marks and citation omitted). In assessing the appropriate measure of punitive damages, there are "nine 'legal principles or considerations which should guide a trial court[.]'" *Darcars Motors of Silver Spring, Inc. v. Borzym*, 841 A.2d 828, 843 (Md. 2004). These "factors are not criteria that must be established but, rather, guideposts to assist a court in reviewing an award." *Id.* The factors are:

> (1) The gravity of the defendant's wrong; (2) The defendant's ability to pay; (3) The deterrence value of the amount awarded by the jury, under all the circumstances of the case; (4) Comparison of the punitive damages award to the civil or criminal penalties that could be imposed for comparable misconduct; (5) Comparison of the punitive damages award to other final punitive damages awards in the jurisdiction; (6) Other final and satisfied punitive damages awards against the same defendant for the same conduct; (7) If the punitive damages award is based on separate torts, whether all the torts grew out of a single occurrence or episode; (8) Plaintiff's reasonable costs and expenses resulting from the defendant's malicious and tortious conduct which are not covered by the award of compensatory damages; and (9) The relationship between the punitive and compensatory awards in the case.

*CMH Mfg. v. Neil*, 620 F. Supp. 3d 316, 323–24 (D. Md. 2022) (citing *Bowden*, 710 A.2d at 278–85). In addition, "simply because the defendant has engaged in some 'heinous' or 'egregiously bad conduct' does not necessarily justify a large award of punitive damages. Under Maryland law, engagement in such conduct is a prerequisite for *any* award of punitive damages." *Bowden*, 710 A.2d at 278 (emphasis in original).

The Court finds that a meaningful award of punitive damages is warranted in this case. In particular, the Court finds that the gravity of iProcess' wrong and the deterrence value of punitive damages support such an award, given iProcess' misappropriation of its employees' earned wages and its failure to provide matching contributions over a period of several years; iProcess' corresponding falsification of employee records to cover up this misappropriation; and the relationship between the parties—a long-time employer-employee relationship and not simply an arms-length business relationship. *See Bowden*, 710 A.2d at 279 (explaining that "repeated or frequent misconduct of the same nature, misconduct of long duration, attempts to conceal or cover-up the misconduct, failure to take corrective action, and similar circumstances, support the deterrence value of a significant award").

Plaintiffs have not provided the Court with any authority that would support the award of punitive damages in the amount of five times their compensatory damages, and indeed such an award would be excessive. In default judgment cases involving fraud, the punitive damages in this District appear to generally range from approximately half to double the compensatory damages award. *See, e.g., Quan v. TAB GHA F&B, Inc.*, Civ. No. TDC-18-3397, 2021 WL 4129115, at *4 (D. Md. Sept. 10, 2021), *report and recommendation adopted*, Civ. No. TDC-18-3397, 2021 WL 6881288 (D. Md. Nov. 9, 2021) (awarding punitive damages of $250,000 and compensatory damages were $500,000); *Allen v. Kavasko Corp.*, Civ. No. WMN-15-1839, 2015

7

WL 8757799, at *2 (D. Md. Dec. 15, 2015) (awarding punitive damages of $89,530.20 and compensatory damages of $89,530.20); *Recycling Sols., Inc. v. Orrs' Env't, LLC*, Civ. No. PWG-14-1062, 2015 WL 3948981, at *10 (D. Md. June 26, 2015) (awarding punitive damages of $100,000 and compensatory damages of $88,521); *Legacy Inv. & Mgmt., LLC v. Susquehanna Bank*, Civ. No. WDQ-12-2877, 2014 WL 5325757, at *11 (D. Md. Oct. 17, 2014) (awarding punitive damages of $300,000 and compensatory damages of $159,293.14).

With these factors in mind, the Court finds that a punitive damages award equal to the compensatory damages award is appropriate and will enter judgment in favor of Plaintiffs and against iProcess in the amount of $279,652.25 with respect to punitive damages.[2]

### C. *Court Costs and Post-Judgment Interest*

Each Plaintiff also seeks court costs and post-judgment interest. With respect to court costs, Plaintiffs must follow the procedure outlined in Local Rule 109. This they have not done,

---

[2] The other factors do not alter the Court's assessment of the appropriate amount of punitive damages and, as noted, the Supreme Court of Maryland has stressed that "the factors are not criteria that must be established but, rather, guideposts" and that "not all are pertinent in every case involving [ ] punitive damage awards." *Darcars*, 841 A.2d at 843.

For instance, Plaintiffs have provided no evidence of iProcess' ability to pay, but this does not prevent the Court from entering judgment in favor of Plaintiffs on their request for punitive damages. *See, e.g., Al-Sabah v. Agbodjogbe*, Civ. No. SAG-17-730, 2020 WL 1307388, at *8 (D. Md. Mar. 19, 2020) (explaining that "this Court has not hesitated to issue even large sums of punitive damages upon . . . a limited record" with respect to a defendant's ability to pay); *HBCU Pro Football, LLC v. New Vision Sports Props., LLC*, Civ. No. WDQ-10-467, 2011 WL 2038512, at *8 (D. Md. May 24, 2011) (awarding $1 million in punitive damages, despite plaintiff offering no evidence as to the defendant's ability to pay). In addition, Maryland Criminal Code § 7-104 provides that, for theft over $100,000, the maximum fine is $25,000. However, Maryland courts have instructed that "[u]nder some circumstances, the maximum criminal fine for comparable conduct should not be given very much weight in reviewing a punitive damages award for excessiveness." *Bowden*, 710 A.2d at 280. This is because "[t]here are many serious criminal offenses chiefly aimed at individuals, rather than corporate entities, where the principal sanction is imprisonment, and the monetary penalty is relatively small." *Id.*

The Court pauses to discuss iProcess' purported failure to respond to a government subpoena relating to its handling of their 401(k) plan. "Due process does not permit courts, in the calculation of punitive damages, to adjudicate the merits of other parties' hypothetical claims against a defendant under the guise of the reprehensibility analysis[.]" *State Farm Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 423 (2003). "A defendant should be punished for the conduct that harmed the plaintiff, not for being an unsavory individual or business." *Id.* Here, the Court has not adjudicated any claims relating to iProcess' failure to respond to a subpoena and therefore will not consider such allegations in determining the appropriate measure of punitive damages.

yet. Accordingly, the Court will deny Plaintiffs' request for costs without prejudice. With respect to Plaintiffs' request for post-judgment interest, the post-judgment interest rate on money judgments in federal civil cases is mandatory and governed by statute. *See* 28 U.S.C. § 1961(a) ("Interest shall be allowed on any money judgment in a civil case recovered in a district court."); *Vandevender v. Blue Ridge of Raleigh, LLC*, 756 F. App'x 230, 233 (4th Cir. 2018) (explaining that the "award and rate of interest under 28 U.S.C. § 1961(a) is mandatory").

### IV.   Conclusion

For the foregoing reasons, the Court will enter judgment against iProcess in favor of Plaintiffs in the amount of $559,304.50, which represents $279,652.25 in compensatory damages and $279,652.25 in punitive damages.

DATED this *10* day of July, 2023.

BY THE COURT:

_____
James K. Bredar
Chief Judge